UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MATTHEW R. SNYDER,

    Plaintiff,

    v.                                                                      Case No. 1:24-CV-243 JD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

**OPINION AND ORDER**

Plaintiff Matthew Snyder applied for a period of disability and disability insurance

benefits under Title II of the Social Security Act, alleging that he became disabled in August

2021. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who

concluded that Mr. Snyder was not disabled. The Appeals Council later denied his request for

review, and Mr. Snyder now seeks judicial review in this Court. For the reasons below, the Court

will affirm the Agency's decision.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as

the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits

if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The

threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1.  Whether the claimant is currently engaged in substantial gainful activity;

2.  Whether the claimant has a medically severe impairment;

3.  Whether the claimant's impairment meets or equals one listed in the regulations;

4.  Whether the claimant can still perform past relevant work; and

5.  Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### C. The ALJ's Decision

Mr. Snyder filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning in August 2021, when he was 21 years old. His claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on August 10, 2023. In this appeal, Mr. Snyder is challenging only the ALJ's determination that there are jobs available in significant numbers in the national economy that he can still perform. Accordingly, in this background section, the Court will focus only on information relevant to that claim.

At the hearing, Mr. Snyder testified that he could lift a maximum of about three pounds with his right hand. (R. at 44.) He explained he could "not really" button or zip with his right hand and that he did most everything with his left hand. (R. at 45.) He said he could not pick up a can of soda, turn a doorknob, or even do a thumbs up. (R. at 50–51.) Mr. Snyder described his right hand as a guide hand. (R. at 51.)

A vocational expert ("VE") testified next. The ALJ presented a hypothetical individual with the same residual functional capacity ultimately assigned to Mr. Snyder and asked whether such an individual could perform Mr. Snyder's past relevant work. The VE responded that the individual could not. However, the VE testified that the hypothetical individual could perform other jobs available in the national economy: sorter (DOT #361.687-014; 12,000 jobs nationally), checker (DOT #222.687-010; 10,000 jobs nationally), and routing clerk (DOT #222.687-022; 13,000 jobs nationally). (R. at 57–58.) Thus, the VE testified that there are 35,000 jobs in the national economy that Mr. Snyder can perform.

The VE explained that, in selecting these jobs, he considered Mr. Snyder's limitations in his right hand. Although the total number of jobs in these categories was higher, he reduced the

4

estimates by 75% to account for Mr. Snyder's hand limitations. The VE stated that he relied on

occupational requirements survey data from the Department of Labor, which provides

information on the amount of reaching, handling, and fingering—whether bimanual or not—

required to perform various jobs. (R. at 66–67.) Mr. Snyder's attorney asked the VE to provide a

regional breakdown of the national job numbers. (R. at 64.) The ALJ interjected, stating,

"[Counsel], I think the standard is the national standard. But he can answer the [question]." (*Id.*)

The VE responded, "I do not have regional numbers." (R. at 64.)

On March 20, 2024, the ALJ issued a decision finding that Mr. Snyder was not disabled.

(R. at 24.) In doing so, the ALJ employed the customary five-step analysis. At step two, the ALJ

determined that Mr. Snyder suffered from the following severe impairments: "post-traumatic

stress disorder (PTSD); anxiety; depression; attention-deficit hyperactivity disorder (ADHD);

learning disability; and congenital deformity of right hand" (R. at 12.) Before proceeding to step

four, the ALJ assessed Mr. Snyder's residual functional capacity ("RFC") [1] and found that he is

capable of performing a reduced range of light work,[2] subject to various physical and mental

limitations. (R. at 15.) At step four, the ALJ determined that Mr. Snyder "was unable to perform

any past relevant work." (R. at 22.)

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

Finally, at step five, relying on the testimony of the VE, the ALJ concluded that "considering [Mr. Snyder's] age, education, work experience, and residual functional capacity, [Mr. Snyder] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. at 23–24.) In her decision, the ALJ explained the methodology used by the VE in arriving at the final job numbers:

> The vocational expert further noted that the job numbers were reduced 75% to account for the upper extremity limits, which he stated was not an accommodation, and that his source of the information was the ORS, DOL, as well as his observations of individuals doing these jobs, knowledge, and experience, including observations of individuals doing these jobs essentially one-handed.

(R. at 23.)

## D.  Discussion

In his appeal, Mr. Snyder argues that the ALJ committed reversible error by concluding that the ability to perform 35,000 jobs in the national economy constitutes a "significant" number of jobs at step five of the disability determination process. Mr. Snyder highlights that the 35,000 jobs represent only 0.02% of the total jobs in the U.S. economy, which is insufficient to meet the threshold of a "significant" number of jobs. Mr. Snyder contends that the ALJ failed to provide a regional breakdown of the 35,000 jobs, which he claims is required by Social Security regulations. Mr. Snyder argues that the ALJ's decision should be reversed and remanded for further evidentiary development regarding regional job numbers or, alternatively, that the Court should order the Social Security Administration to issue a fully favorable decision due to the insufficient number of jobs.

"At step five, the ALJ is granted discretion to determine what constitutes a 'significant' number of jobs on a case-by-case basis. The Commissioner is 'responsible for providing

6

evidence that demonstrates that other work exists in significant numbers in the national economy.'" *Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022) (quoting 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2)). "Whether a claimant can make an adjustment to this other work is determined by the ALJ based on a residual functional capacity assessment and the claimant's age, education, and work experience." *Id.* at 694 (quotation marks, citations, and brackets omitted). "ALJs typically rely on vocational experts to list jobs in the national economy that claimants can perform. After the vocational expert provides an opinion on the number of jobs available, it's up to the ALJ to determine whether that number is significant. And we review the ALJ's answer—as a factual finding—under the deferential substantial evidence standard." *DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, *3 (7th Cir. Aug. 11, 2022) (quoting *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022) (per curiam)). Vocational experts generally supplement information provided in the Dictionary of Occupational Titles "by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations. The ALJ must assess whether this evidence establishes more than isolated jobs that exist only in very limited numbers in relatively few locations." *Milhem*, 52 F.4th at 694 (quotations marks, citations, and brackets omitted).

"Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" 20 C.F.R. § 404.1566(b). In other words, "work that exists 'in very limited numbers' cannot be considered 'significant.' It is within the ALJ's discretion to determine whether jobs exist only in very limited numbers. This determination does not depend upon the establishment of a standard for significance. *Milhem*, 52 F.4th at 694 (citations omitted). The relevant statutory language does not require the consideration of job numbers in the immediate area in which a claimant

lives. *DuCharme*, 2022 WL 3287974, * 3 (citing 42 U.S.C. § 423(d)(2) ("An individual shall be

determined to be under a disability only if . . . he . . . cannot . . . engage in any other kind of

substantial gainful work which exists in the national economy, regardless of whether such work

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him,

or whether he would be hired if he applied for work.")). "And although the statute . . . defines

'work which exists in the national economy' to 'mean[ ] work which exists in significant

numbers either in the region where such individual lives or in several regions of the country,' it's

clear that the statement about jobs 'in the region where such individual lives or in several regions

of the country' aims to avoid counting jobs that exist in only a few regions of the country where

the claimant doesn't live (think of a commercial coffee farming job when coffee can be grown in

less than a handful of states)." *DuCharme*, 2022 WL 3287974, at *3 (quoting 42 U.S.C. §

423(d)(2)).

With these principles in mind, and relying on the Circuit's most recent precedent, the

Court finds that the 35,000 jobs in the national economy that Mr. Snyder can perform constitute

a significant number of jobs, and that the ALJ's determination is supported by substantial

evidence. In *Harry v. Kijakazi*, No. 22-CV-186-BHL, 2022 WL 17584174, at *5 (E.D. Wis. Dec.

12, 2022), the district court held that 29,800 jobs in the national economy constituted a

"significant number." There, the court explained that where the ALJ grounds her conclusion—as

the court did in *Milhem*—on the claimant's age, education, work experience, and RFC, and finds

that the claimant is capable of making a successful adjustment to work existing in the economy,

and where the ALJ employs hypotheticals to determine the type of work the claimant can

perform, such a determination is supported by substantial evidence. This is precisely what the

ALJ did here. She explicitly found that Mr. Snyder was capable of making a successful

adjustment to other work that existed in significant numbers in the national economy:

> Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.

(R. at 23–24.) The ALJ also presented a series of hypotheticals to assess whether Mr. Snyder

could perform light work and what tolerances for absences were permitted—"all of which

reflected '[her] conclusions about [the claimant's] capacity to perform work.'" *Harry*, 2022 WL

17584174, at *5 (quoting *Milhem*, 52 F.4th at 696).

Similarly, in *Teresa M. v. Kijakazi*, No. 20-C-859, 2022 WL 17406596, at *8 (N.D. Ill.

Nov. 22, 2022), the district court held that 28,000 jobs available in the national economy

constituted a significant number after considering that "the ALJ factored in the VE's testimony,

[p]laintiff's age, and her RFC" in reaching that conclusion. Likewise, in *Sara B. v. Kijakazi*, No.

1:22-CV-52-JVB, 2023 WL 2013323, at *4 (N.D. Ind. Feb. 15, 2023), the district court found

that 41,000 positions in the national economy identified by the VE were "a significant number"

where the ALJ applied the same principles in reaching her decision. In both *Harry* and *Teresa*,

the courts observed that the respective job numbers comported with *Milhem*, which cited

"approvingly to decisions from other circuits in which 32,000, 25,000, and 10,000 national jobs

were held to be 'significant.'" *Harry*, No. 22-CV-186-BHL, 2022 WL 17584174, at *5 (citing

*Milhem*, 52 F.4th at 697 (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022)

(32,000 jobs); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 jobs);

*Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs))); *see also Teresa M.*, No.

20-C-859, 2022 WL 17406596, at *8 (same).

Although the Commissioner cited *Harry, Teresa, and Sara B.* in its response brief, Mr. Snyder ignores these cases in his reply. Instead, he focuses on decisions predating *Milhem*, arguing that 35,000 jobs in the national economy are not a significant number. In particular, he relies on *Sally S. v. Berryhill*, No. 2:18CV460, 2019 WL 3335033 (N.D. Ind. July 23, 2019), which held "that 120,350 jobs in the entire nation (0.080% of jobs) is not a significant number on which to deny disability benefits." *Id*. at \*11. But *Sally S.* was repudiated just a couple of years later by the same judge who issued the order, calling the case "unworkable":

> Plaintiff cites to *Sally S. v. Berryhill*, No. 2:18cv460 (July 23, 2019), for the proposition that the 89,000 total jobs identified by the VE are not a "significant number" of jobs in the national economy. In *Sally S.*, the Court held that 120,350 jobs in the national economy was not a significant number. *Sally S.* was decided in 2019 and, *quite frankly, has proven unworkable in the ensuing years*. Thus, later decisions from this Court have retreated from the *Sally S.* holding.

*Jennifer K. v. Kijakazi*, No. 1:21CV68, 2022 WL 766164, at \*4 (N.D. Ind. Mar. 14, 2022) (emphasis added) (collecting cases in fn.2), aff'd sub nom. *Karr v. Kijakazi*, No. 22-1857, 2023 WL 3480924 (7th Cir. Mar. 16, 2023). Affirming the Agency's decision, the court noted its turnaround:

> [U]nless the number of jobs identified by the VE is startling low (or in the unlikely event Seventh Circuit sets forth a threshold), the undersigned will continue to defer to the ALJ and VE on the question of the significance of the number of identified jobs. Thus, remand is not warranted on this issue.

*Id*.

In *Milhem*, the plaintiff also relied on *Sally S.*, but the Seventh Circuit found that reliance misplaced. 52 F.4th at 695. The court noted that *Sally S.* did not account for the Seventh Circuit's decision in *Weatherbee v. Astrue*, 649 F.3d 565 (7th Cir. 2011), where it concluded that 140,000 national jobs constituted a "significant" number at step five of the analysis. The court also observed that, in *Sally S.*, the Commissioner's brief was nonresponsive to the plaintiff's

argument as it cited cases focused on regional job numbers, rather than national ones. *Milhem*, 52

F.4th at 695. The court acknowledged that *Sally S.* was "properly attentive to the difference

between regional versus national numbers of jobs," but rejected the notion that a significant

number should be a certain number relative to the total jobs in the national economy. The court

explained that the SSA's statutes and regulations do not impose any numeric threshold for

"significance." *Id*. at 694–96. Instead, as the court reiterated, the number of jobs must be

evaluated under the substantial evidence standard.

Mr. Snyder also cites *Kaleb A.G. v. Kijakazi*, 1:22-cv-1105 (S.D. Ind. Sep. 26, 2023), to

support the argument that 35,000 jobs in the national economy do not constitute a significant

number. In *Kaleb A.G.*, the district court remanded the case where the ALJ found that 20,200

was a significant number of jobs in the national economy. But in remanding, the court was

mainly concerned with the ALJ's failure to reconcile the conflicts between the outdated job

descriptions in the Dictionary of Occupational Titles and the vocational expert's testimony about

what the jobs entailed, leading the court to conclude that the ALJ's decision was not based on

substantial evidence. *Id.* at 12–14. The court found that the possibility of the discrepancy of how

many jobs were actually available was great. *Id.* at 18–19. No such concerns exist in Mr.

Snyder's case where the ALJ appropriately adjusted job numbers because of his right-hand

limitations. Mr. Snyder cites several other district court cases, each of them decided before

*Milhem*, but they, too, suffer from similar deficiencies.

Finally, Mr. Snyder argues that the ALJ erred because she did not provide a "regional

breakdown" of the national job number of 35,000. The Seventh Circuit addressed this issue in

*DuCharme*, 2022 WL 3287974. There, the court affirmed the ALJ's finding that 31,000 jobs

constitute a significant number in the national economy. *Id*. ("DuCharme first contests the ALJ's

finding that 31,000 jobs is significant nationally. But we've already affirmed an ALJ's finding

that 30,000 jobs was significant, *Mitchell v. Kijakazi*, 2021 WL 3086194, at *2 (7th Cir. July 22,

2021), and other courts have held that similar numbers "fit[ ] comfortably" within what courts

have deemed significant, *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558 (6th Cir. 2022) (affirming

finding that 32,000 jobs nationally was significant and listing cases)). The claimant however

contended that, even if the 31,000 jobs the vocational expert identified were considered to be

significant nationally, the job number was not significant in his region, and the ALJ should have

provided them. *Id*. at *3. The court rejected the argument, noting that "[t]he relevant statutory

language does not require consideration of the immediate area in which a claimant lives." *Id*.

(citing 42 U.S.C. § 423(d)(2)). In declining to consider the regional number argument, the court

found that there was no evidence in the record that the three jobs the vocational expert

identified—order clerk, document preparer, inspector—were geographically concentrated

outside the state in which *DuCharme* lived. 2022 WL 3287974, at *3. So it is with the jobs

identified in Mr. Snyder's case: there is no evidence in the record that the jobs of sorter, checker,

and routing clerk are limited to any particular geographic location. Simply put, Mr. Snyder's

argument that the VE had to provide a breakdown of national numbers by region has no basis in

the facts here.

### E. Conclusion

For these reasons, the Court AFFIRMS the Agency's decision. The Clerk is directed to

prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 15, 2025

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court