UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MATTHEW R. SNYDER,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:24-CV-243 JD

## OPINION AND ORDER

Plaintiff Matthew Snyder moved under Federal Rule of Civil Procedure 59(e) to amend judgment. Mr. Snyders submits that the Court committed manifest error when it affirmed the Administrative Law Judge's ("ALJ") decision which found that he was not entitled to disability insurance benefits under Title II of the Social Security Act. Mr. Snyder's argument is twofold. First, he contends that the Court erroneously affirmed the ALJ's finding that the 35,000 jobs the vocational expert identified (sorter, checker, and routing clerk) constituted a "significant number of jobs." Second, Mr. Snyder insists that the Court erroneously concluded that the ALJ was not required to provide a regional breakdown of those jobs. For the reasons below, the Court will deny Mr. Snyder's motion.

### A. Background

At the administrative hearing, in response to the ALJ's question about a hypothetical individual with Mr. Snyder's residual functional capacity, Vocational Expert ("VE") Robert Bond testified that such an individual could perform the work of a sorter, checker, and routing clerk, and that cumulatively there were 35,000 such jobs in the national economy. (R. at 57.) At

the end of the hearing, Mr. Snyder's attorney, Nicholas Lavella, cross-examined the VE. As

relevant here, Mr. Lavella asked the VE about the regional availability of the jobs identified by

the VE:

> Q. Okay . You talked about jobs, you know, fairly low numbers of jobs, nationally, in response to the first hypothetical. Do you have any availability of jobs, regionally?
>
> ALJ: Mr. Lavella, I think the standard is the national standard. But he can answer the —
>
> ATTY: Yeah , I know that there's —
>
> ALJ: He can answer the question, but go ahead, Mr. Bond.
>
> ATTY: Sure.
>
> VE: I do not have the regional numbers.
>
> ATTY: Okay. All right, Judge, I don't have any —
>
> ALJ: Oh hold on. It looks like we lost Mr. Snyder here, so I'm adding him back in again. I don't — I am not sure when he was — Mr. Snyder, did you happen to step out of the meeting for a second there?
>
> CLMT: It kicked me out for some reason.
>
> ALJ: Okay. All right. Go ahead, Mr. Lavella.
>
> ATTY: Okay. Judge, actually I was able to ask all the questions I needed to.

(R. at 64.)

The ALJ then asked about the consistency of the VE's testimony with the Dictionary of

Occupational Titles (R. at 65), and Mr. Bond added a couple questions of his own on the subject

of erosion of occupational base (R. at 66), but no further questions were asked about the

distribution of the jobs regionally or nationally.

In her decision, the ALJ found that Mr. Snyder was not disabled, "[b]ased on the

testimony of the vocational expert . . . [and] considering [Mr. Snyder's] age, education, work

experience, and residual functional capacity, [Mr. Snyder] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (ALJ's Decision, R. at 23–24.)

On appeal to this Court, Mr. Snyder argues that the Court misunderstood the current state of the law when it affirmed the ALJ's finding that the 35,000 in the national economy constitute a significant number and concluded that the ALJ was not required to provide a regional breakdown of the jobs.

### B. Legal Standard

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted).

Relief pursuant to a Rule 59(e) motion is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). "[S]uch motions are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (internal quotation marks and citation omitted).

**C. Discussion**

To understand Plaintiff's first argument, and to see where it fails, some background in case law is necessary. In *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009), the Court of Appeals for the Seventh Circuit noted that it would be implausible for the plaintiff to argue that 4,000 regional jobs did not constitute a significant number. In support, it cited several cases where even 1,000 *regional* jobs sufficed. *See id.* (citing cases). "Similarly, in *Weatherbee* [*v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011), [the Seventh Circuit] referred to the 1,000-job figure when discussing regional and national numbers of jobs, but ultimately determined that 140,000 national jobs was 'significant' under step five." *Milhem v. Kijakazi*, 52 F.4th 688, 696 (7th Cir. 2022). As relevant here, a decade after *Weatherbee*, in *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021), the court conflated the national and regional job numbers by citing *Weatherbee* imprecisely. Mitchell found that 30,000 jobs available to the plaintiff was a significant number, but it cited to *Weatherbee*, 649 F.3d 565, 572 (7th Cir. 2011), as "noting that jobs with as few as 1,000 positions nationally are sufficient occupational base." *Mitchell*, No. 20-2897, 2021 WL 3086194, at *3. However, *Weatherbee* was not referring to national but regional jobs when indicating that 1,000 jobs were a sufficient number. A year later, in *Milhem v. Kijakazi*, the court observed that *Liskowitz* and *Weatherbee* had been cited "imprecisely," and that national and regional job numbers had been conflated. It singled out *Mitchell* in a footnote as one of the offenders. *See Milhem*, 52 F.4th at 696, n.4. The court then cautioned that "[m]oving forward, reviewing courts should be attentive to the difference between regional and national job numbers in this discussion." *Id*. at 696.

Three months before *Milhem* was decided, the Court of Appeals addressed the plaintiff's challenge to "the ALJ's finding that 31,000 jobs is significant nationally." *DuCharme v.*

*Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3 (7th Cir. Aug. 11, 2022). The court found the challenge unpersuasive, noting that it had already affirmed in *Mitchell* "an ALJ's finding that 30,000 jobs was significant." *DuCharme*, No. 21-2204, 2022 WL 3287974, at *3, "and other courts have held that similar numbers 'fit[ ] comfortably' within what courts have deemed significant. *Id*. (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558 (6th Cir. 2022) (affirming finding that 32,000 jobs nationally was significant and listing cases)). In turn, this Court cited to *DuCharme*, among other cases, when concluding that the ALJ committed no error when she found that the 35,000 jobs nationally was a significant number.

In his Rule 59(e) motion, Mr. Snyder argues that the Court committed manifest error when affirming the ALJ because it relied on *DuCharme*, which in turn cited *Mitchell*. According to Mr. Snyder, the *DuCharme* panel misunderstood the numerical baseline required for a number of national jobs to be considered significant.

But Mr. Snyder's argument overlooks three things. First, in *Milhem*, the Seventh Circuit did not repudiate the finding in *Mitchell* that 30,000 jobs nationally is a significant number; it only noted that its citation was imprecise. *See Milhem*, 52 F.4th at 696. That is to say, contrary to Mr. Snyder's contention, *Milhem* did not declare *Mitchell* "as essentially having been wrongfully decided." (Pl.'s Br., DE 29 at 4.) Second, *DuCharme* did not solely rely on *Mitchell*. It also cited to the Sixth Circuit's decision in *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558 (6th Cir. 2022), which affirmed the ALJ's finding that 32,000 jobs nationally was significant. *See DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3. Finally, this Court did not rely only on *DuCharme* but also cited district court cases from the Eastern District of Wisconsin, the Northern District of Illinois, and from its own district and, by extension, two circuit court cases from the Eighth and Ninth Circuits. In fact, *Milhem* itself, the centerpiece of Mr. Snyder

5

argument, cited approvingly cases from other circuits that found that 32,000, 25,000, 10,000, and 32,000 national jobs were significant. *See Milhem*, 52 F.4th at 697 (citing *Moats*, 42 F.4th at 563 (6th Cir. 2022) (32,000 national jobs); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 national jobs); and *Weiler v. Apfel*, 179 F.3d 1107, 1110–11 (8th Cir. 1999) (32,000 national jobs)). In short, the Court is not persuaded by Mr. Snyder that it committed manifest error when it affirmed the ALJ's finding that "[b]ased on the testimony of the vocational expert . . . [and] considering [Mr. Snyder's] age, education, work experience, and residual functional capacity, [Mr. Snyder] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (ALJ's Decision, R. at 23–24.)

Mr. Snyder's second argument is that the Court erroneously concluded that the ALJ was not required to provide a regional breakdown of the jobs. According to Mr. Snyder, the Court improperly shifted the burden of proof at step five from the Commissioner to Mr. Snyder, requiring him to show that the jobs exist only in isolated areas rather than the Commissioner demonstrating the opposite.

This argument is not new, and the Court has addressed it in its original ruling. The Court will add, however, that the VE testified that there were 35,000 jobs in the national economy that Mr. Snyder could perform. The ALJ relied on this testimony in arriving at the same numbers. According to 42 U.S.C. § 423(d)(2)(A), "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." As explained in the original order and above, this number constitutes a significant number of jobs. While Mr. Snyder would have preferred that the VE break down the numbers by the regions where the jobs are located, "neither the statute nor

6

implementing regulations actually say that jobs information expressed on a national basis cannot provide the required substantial evidence to support a finding that significant jobs exist consistent with the statute and regulations." *John R. v. Saul*, No. 4:19-CV-84, 2020 WL 6435031, at *4 (S.D. Ind. Oct. 14, 2020), report and recommendation adopted sub nom. *Ritchie v. Saul*, No. 4:19-CV-84, 2020 WL 6411850 (S.D. Ind. Nov. 2, 2020). The Court must be assured that the ALJ based her opinion on substantial evidence. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "[A] vocational expert's testimony will survive federal court review so long as there are 'sufficient indicia of reliability' to support the expert testimony." *Thorpe v. Bisignano*, 148 F.4th 432, 438 (7th Cir. 2025) (quoting *Biestek*, 587 U.S. at 107).

In the context of Mr. Snyder's argument, there must be substantial evidence that the 35,000 jobs identified by the VE are not concentrated in isolated areas. Although the VE did not explicitly say this, the very definition of "work which exists in the national economy" is the "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *See Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("The statute defines work in the national economy as encompassing 'work which exists in significant numbers either in the region where such individual lives or in several regions of the country.' 42 U.S.C. § 423(d)(2)(A). There is no reason to believe that the VE was not using that statutory definition of 'in the national economy' when testifying as to jobs available nationwide.")

Granted, the VE did not know how many jobs were available locally, but they are seemingly routine positions (checker, DOT Number 222.687-010;[1] routing clerk, DOT Number 222.687-022;[2] and sorter, DOT Number 361.687-014[3]), and there is no evidence in the record to suggest these jobs are geographically concentrated in other areas of the country. *See DuCharme*, No. 21-2204, 2022 WL 3287974, at *3 (recognizing that the requirement for jobs to be in the region where the claimant lives or in several regions of the country "aims to avoid counting jobs that exist in only a few regions of the country where the claimant doesn't live," such as commercial coffee farming). Furthermore, the parties stipulated to the VE's qualifications (R. at 55–56), and Mr. Snyder does not contend that the VE's testimony was inconsistent with the Dictionary of Occupational Titles, or that his methodology was flawed. *See Hohman v. Kijakazi*, 72 F.4th 248, 254 (7th Cir. 2023) ("A federal court's review of an ALJ's decision 'is case-by-case,' and 'takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record.'" (quoting *Biestek*, 139 S. Ct. at 1157)).

At most, Mr. Snyder repeats that the identified number of jobs represents only 0.02% of the jobs in the country and wants the Court to extrapolate from this that the jobs number is insignificant. But like in *DuCharme,* the Court won't engage in "back-of-the-envelope

---

[1] Checker I: "Verifies quantities, quality, condition, value, and type of articles purchased, sold, or produced against records or reports. May sort data or items into predetermined sequence or groups. May record items verified. May be designated according to type of establishment as Warehouse Checker (clerical). 222.687-010 Checker I, DICOT 222.687-010.

[2] Routing Clerk: "Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter (r.r. trans.). 222.687-022 Routing Clerk, DICOT 222.687-022.

[3] "Classifier: "Sorts laundry into lots, such as flatwork, starchwork, and colored articles prior to washing or ironing: Places sorted articles in bins, nets, or baskets, or onto conveyor belt. May weigh flatwork and record weight on laundry ticket. May affix customer's identification mark on articles or fasten identifying pin to nets." 361.687-014 Classifier, DICOT 361.687-014.

8

calculations." *DuCharme*, No. 21-2204, 2022 WL 3287974, at *3. Finally, although Mr. Snyder does not argue this outright, to the extent that he may be suggesting that the ALJ should have identified the number of jobs locally, accepting this argument "would mean that nearly every disability denial decision over the last [decade] is subject to remand on that basis alone. The court is not aware of any decision that holds as such." *John R. v. Saul*, No. 4:19-CV-84, 2020 WL 6435031, at *5 (S.D. Ind. Oct. 14, 2020), report and recommendation adopted sub nom. *Ritchie v. Saul*, No. 4:19-CV-84, 2020 WL 6411850 (S.D. Ind. Nov. 2, 2020); *see also Henri A. v. Kijakazi*, No. 1:22-CV-461, 2023 WL 386334, at *11 (S.D. Ind. Jan. 25, 2023) ("The Seventh Circuit has commented, albeit in passing, that the utility of the SSA citing local and state job figures 'is unclear, since if there is a significant number of jobs that the applicant for benefits can perform anywhere in the United States he is deemed not disabled . . . .'") (quoting *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015)). To conclude, even if reasonable minds could differ that the jobs are not concentrated in isolated areas, the Court is satisfied that the ALJ's decision is based on substantial evidence. *See Thorpe*, 148 F.4th at 437 ("As a reviewing court, we must affirm the ALJ's decision if it is adequately supported, regardless of whether "reasonable minds could differ." (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

What's more, Mr. Snyder's attorney asked only one questions concerning the number of jobs and it was limited to the regional economy. Although the ALJ interjected, suggesting that the standard "is the national standard," she nevertheless allowed the VE to answer the question. The VE said he did not have regional numbers, and Mr. Snyder's attorney asked no other questions about this topic. Nor did he object to the VE's testimony or question the VE as to why he did not have the regional numbers or whether he had information on how the jobs were distributed among several regions. By foregoing these questions and the challenge to the regional

9

breakdown of the jobs, Mr. Snyder has forfeited this issue on appeal. *See Thorpe*, 148 F.4th at 437 (finding that the plaintiff forfeited his challenge that the ALJ improperly shifted the burden onto the plaintiff because the objection was first made before the district court rather than the agency); *Leisgang v. Kijakazi*, 72 F. 4th 216, 220 (7th Cir. 2023) (while "the ALJ . . . cannot accept testimony from a VE that is facially implausible or incoherent," "a claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record" (citing *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023)).

**D. Conclusion**

For these reasons, the Court DENIES Mr. Snyder's motion under Federal Rule of Civil Procedure 59(e).

SO ORDERED.

ENTERED: April 23, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court

10